NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

May 15, 2023

Dara J. Lawall, Esq.
Lawall & Mitchell, LLC
55 Madison Avenue, Suite 400
Morristown, NJ 07960
*Attorney for Plaintiff Bergen Plastic Surgery*

Mariellen Dugan, Esq.
Niko J. Rydelek, Esq.
Calcagni & Kanefsky, LLP
One Newark Center
1085 Raymond Boulevard, Floor 14
Newark, NJ 07102
*Attorneys for Defendant Aetna Life Insurance Company*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

Re:   *Bergen Plastic Surgery v. Aetna Life Ins. Co.*
      **Civil Action No. 22-227 (SDW) (JSA)**

Counsel:

Before this Court is Aetna Life Insurance Company's ("Defendant") Motion to Dismiss Plaintiff Bergen Plastic Surgery's ("Plaintiff") First Amended Complaint ("FAC") (D.E. 16) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (D.E. 18). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391, respectively. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a healthcare services company in New Jersey and brings this suit to recover payments for three surgeries its employees performed on "SM" ("Patient"), who was insured by Defendant at the time of treatment. (FAC ¶¶ 4–5, 11, 14–15, 29, 38.) The surgeries resulted in a bilateral mastectomy and were medically necessary given Patient's diagnosis of a genetic predisposition to breast cancer. (*Id*. ¶ 12–13.) At all relevant times, Plaintiff was an out-of-network provider under Patient's insurance plan. (*Id*. ¶ 12.)

Plaintiff alleges that, prior to each surgery and "as part of its normal practice, [it] obtained authorization for the medically necessary treatment of the Patient" and Defendant's representatives "approved . . . the services to be performed by Plaintiff," as follows. (*Id*. ¶¶ 16–17, 25–26, 34–35.)  The first surgery was approved on January 19, 2017, by representative Sam I., under authorization number 3028860432; the second was approved on or about January 31, 2017, by representative Jay L. under authorization number 13256439; and the third was approved on May 19, 2017, by representative James under authorization number 46962949.  (*Id*. ¶¶ 17, 26, 35.) Plaintiff billed Defendant a total of $116,700.00 for the three surgeries, which is a normal and reasonable amount for such procedures in New Jersey.  (*Id*. ¶ 21, 31, 40, 42.)  Defendant paid Plaintiff only $2,135.59 of the amount billed.  (*Id*. ¶ 42.)

Plaintiff filed the instant lawsuit on December 1, 2021, in the Superior Court of New Jersey, Law Division, Bergen County, and served Defendant with a copy of the summons and complaint on December 20, 2021.  (D.E. 1-1 at 13.)  The Complaint asserted claims for: (1) breach of contract (First Count); (2) promissory estoppel (Second Count); and (3) account stated (Third Count).  (D.E. 1-1 ¶¶ 40–56.)  Defendant timely removed the suit to this Court on January 18, 2022, based on diversity jurisdiction.  (D.E. 1.)  *See* 28 U.S.C. §§ 1332, 1446(b).  On Defendant's motion, this Court dismissed the Complaint without prejudice for failure to state a claim.  (D.E. 10, 14–15.) On October 5, 2022, Plaintiff filed its First Amended Complaint, asserting the same three claims. (D.E. 16.)  Defendant subsequently filed the instant motion to dismiss, and the parties have completed briefing.  (D.E. 18, 22, 23.)

## II.     LEGAL STANDARD

An adequate complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim for relief must be "plausible" and a complaint will not survive a motion to dismiss if the "well-pleaded facts do not permit the court to infer more than the mere possibility" of defendant's liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (noting that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

The First Amended Complaint must be dismissed because Plaintiff's minimal alterations to the pleadings have not cured the deficiencies identified in this Court's prior Opinion.  (*See* D.E. 14.)  Once again, Plaintiff has not alleged sufficient facts to set out a plausible claim that Defendant made any contract or promise to pay Plaintiff for Patient's surgeries.

### A.     Breach of Contract and Promissory Estoppel (First and Second Counts)

To state a claim for breach of contract under New Jersey law, a plaintiff must allege that: (1) the "parties entered into a contract containing certain terms"; (2) the plaintiff "did what the contract required [it] to do"; (3) the defendant did not, and thus breached the contract; and (4) the defendant's breach "caused a loss to the plaintiff." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (quoting N.J. Model Civil Jury Charges § 4.10A, *The Contract Claim – Generally*, (May 1998)).[1] "Like express contracts, contracts implied in fact depend on mutual agreement and intent to promise," but in the case of an implied-in-fact contract, the parties manifest these elements "by conduct instead of words." *Saint Barnabas Med. Ctr. v. Essex Cnty.*, 543 A.2d 34, 39 (N.J. 1988) (quotation marks omitted). A contract "must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. . . . Where the parties do not agree to one or more essential terms, . . . courts generally hold that the agreement is unenforceable." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quotation marks and citations omitted).

To state a claim for promissory estoppel, a plaintiff must establish "four elements: (1) a clear and definite promise; (2) made with the expectation that the [plaintiff] will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008). "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) (quoting *Restatement (Second) of Contracts* § 5 comment a (1979)).

Plaintiff's breach-of-contract claim alleges that Defendant "authoriz[ed]" Patient's surgeries which created an implied-in-fact contract to pay a fair and reasonable rate for those services. (FAC ¶¶ 44–47.) Similarly, Plaintiff's promissory estoppel claim alleges that Defendant's "authorizations" amounted to a promise to pay Plaintiff for its services at "the usual, customary and reasonable rate." (*Id.* ¶ 52.) In an apparent attempt to save these claims, the First Amended Complaint adds allegations regarding a "prior course of dealings" between the parties which implied that Defendant would pay "the usual and customary rate to Plaintiff for the services provided to the Patient." (*Id.* ¶¶ 18–19, 27–28, 36–37.) However, these are only briefly described as follows: "in the Parties' prior course of dealings, when Defendant intends not to pay the usual and customary rates to Plaintiff, Defendant takes steps to advise Plaintiff of the rates at which they intend to pay for the specified services." (*Id.* ¶¶ 19, 28, 37.)

Once again, claiming that the surgeries were "pre-authorized" and medically necessary, without more, is insufficient to allege that the parties had a contract with certain terms or that Defendant had made a "clear and definite" promise to pay any amount to Plaintiff. *Weichert Co. Realtors*, 608 A.2d at 284; *Toll Bros*, 944 A.2d at 19.[2] Defendant has attached two of the three

---

[1] This case was initially filed in the Superior Court of New Jersey, and the parties appear to agree that New Jersey law applies to Plaintiff's claims. (*See* D.E. 18-1 at 7–8; D.E. 22 at 8–9.)

[2] Plaintiff asserts that the facts in this case are similar to those in *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 144 (2d Cir. 2017). (D.E. 22 at 14.) However, in that case, an Aetna representative told the provider it "would be reimbursed at seventy percent of the usual, customary, and reasonable ("UCR") rate for the knee surgeries and that this rate would be based on an industry-standard schedule." Here, there is no allegation of an express promise to reimburse Plaintiff, let alone a promise to reimburse at a specified rate.

3

authorizations to its reply brief.  (*See* D.E. 23-1, 23-2, 23-3.)[3]  While this Court would dismiss Plaintiff's claims with prejudice even without considering them, the authorizations provide additional support for doing so, because they do not contain any language expressing an intent to pay a specific sum or rate for Patient's surgeries.  Rather, they clearly warn that the coverage is subject to a number of conditions and that care by out-of-network providers may not be fully covered, and they recommend that Patient "[g]et approval for [her] highest benefit level from [Defendant] before using out-of-network providers."  (D.E. 23-2 at 4–5.)

Plaintiff's vague allegations concerning prior dealings are also insufficient to demonstrate that Defendant's conduct implied a promise to pay for the Patient's surgeries.  Plaintiff does not define what the "usual and customary rate" is, nor explain whether that is the same as the "fair and reasonable" amount, both of which Defendant allegedly agreed to pay.  (FAC ¶¶ 36, 46.)[4]  Plaintiff also does not allege any particular amount or rate that Defendant has ever paid Plaintiff in the past, nor describe any relevant terms of Patient's health insurance plan concerning her out-of-network coverage.

As an out-of-network provider under Patient's insurance plan, Plaintiff cannot have reasonably expected Defendant to pay the full cost of Patient's surgeries under the circumstances alleged, and the claim that Defendant tacitly agreed to pay merely because it did "not object[]" to bills from an out-of-network provider is untenable.  (FAC ¶ 58.)[5]  Plaintiff does not allege any specific, affirmative conduct by Defendant—whether regarding this Patient's coverage or any other prior dealings between the parties—that could lead a reasonable party to believe that Defendant promised to pay for Patient's surgeries or that the parties reached any mutual agreement on the amount that would be paid.  *See Saint Barnabas Med. Ctr.*, 543 A.2d at 39; *Toll Bros.*, 944 A.2d at 19.  Plaintiff's breach-of-contract and promissory estoppel claims will therefore be dismissed for failure to allege the most essential element of those claims—a contract or promise.

### B. Account Stated (Third Count)

A claim for account stated requires an express or implied "admission by [a] debtor to [a] creditor of a stated indebtedness" which constitutes an implied promise to pay.  *Harris v. Merlino*, 61 A.2d 276, 279 (E. & A. 1948); *see Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 536 (D.N.J. 2019).  Thus, "[t]he essential elements of an account stated are (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; and (3) a promise by the debtor, express or implied, to pay the amount due." 29 Williston on Contracts § 73:56 (4th ed.).  "In some circumstances, silence on behalf of the debtor can result in acquiescence to the sum due if the debtor does not respond for a reasonably long period of time." *Asco Power Techs., L.P. v. Pepco Techs., L.L.C.*, 2006 WL 3000334 at *7 (D.N.J. Oct. 20, 2006).

---

[3] This Court may consider the authorizations in deciding this motion to dismiss because they are "explicitly relied upon in the complaint" and Plaintiff's claims are "based on" the authorizations. *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016) (emphasis omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). (*See* FAC ¶¶ 17, 26, 35, 46, 52.)

[4] The First Amended Complaint also combines these terms to allege that Defendant agreed to pay a "usual, customary, reasonable, and fair" amount.  (FAC ¶ 52.)

[5] The First Amended Complaint also appears to allege that Defendant was billed separately for the three surgeries, and that Defendant acknowledged but paid *nothing* toward the first bill, which implies that Defendant in fact did not agree to pay the billed amount.  (*Id*. ¶¶ 18–20, 26–30, 35–37.)

A debtor's partial payment of an invoice may also constitute an implied admission of indebtedness for the balance. *See Harris*, 61 A.2d at 279; *Maersk Line*, 427 F. Supp. 3d at 536.

       The First Amended Complaint does not address the deficiencies identified in this Court's prior Opinion with regard to Plaintiff's account stated claim. Again, the mere allegation that Defendant "acknowledged receipt of [Plaintiff's] bills" and paid them in part without "object[ing] in any manner to the billed amounts" is insufficient to allege an account stated claim without any allegations suggesting that the parties had a debtor–creditor relationship. (FAC ¶ 60.) *See Harris*, 61 A.2d at 279; 29 Williston on Contracts § 73:56 (4th ed.); *Maersk Line*, 427 F. Supp. 3d at 536. Plaintiff provided a service to *Patient*, not Defendant, and the degree to which Defendant agreed to cover the out-of-network costs of Patient's care is not stated in the First Amended Complaint. Given that the parties are an insurance carrier and an out-of-network provider, Defendant's partial payment implies that the balance due is the responsibility of *Patient* and does not imply tacit agreement by Defendant to pay the balance. For all of these reasons, Plaintiff fails to state a claim for account stated, and this claim must be dismissed.

## IV.    CONCLUSION

       For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's First Amended Complaint is **DISMISSED WITH PREJUDICE**. An appropriate order follows.

                                              /s/ Susan D. Wigenton
                                   **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties
        Jessica S. Allen, U.S.M.J.